**CLAUSON, Collector of Internal Revenue, v. VAUGHAN.**

No. 4020.

Circuit Court of Appeals, First Circuit.

Jan. 29, 1945.

L. W. Post, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., J. Louis Monarch, Helen R. Carloss, and James P. Garland, Sp. Assts. to the Atty. Gen., John D. Clifford, Jr., U. S. Atty., and Edward J. Harrigan, Asst. U.S. Atty., both of Portland, Me., on the brief), for appellant.

Earle W. Carr, of Boston, Mass. (Philip G. Willard, of Portland, Me., and Gaston, Snow, Rice & Boyd, of Boston, Mass., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This in an appeal by the defendant, a collector of internal revenue, from a judgment entered by the court below for the plaintiff in an action to recover a deficiency in federal estate tax assessed against her as executrix of the estate of her deceased husband, Henry G. Vaughan, and paid under protest. The case was heard by the District Court on the pleadings and a stipulation of facts. Its opinion is reported in 54 F.Supp. 8.

The facts can be stated briefly.

Benjamin Vaughan, father of Henry, died on July 2, 1912, leaving a will, by a codicil to which dated February 12, 1911, he left certain property to his daughter Bertha in trust "for the benefit of my son Henry and the income of said trust shall be payable to him only in the absolute discretion of the trustee and he shall have no rights whatsoever therein at his decease the trust shall terminate and the principal and any income thereof shall be disposed of as my son Henry may by will appoint. But no portion whatsoever of the income or principal of said trust shall ever go or be paid directly or indirectly to the present wife of said Henry or to any of her family or assigns whether by voluntary or involuntary assignment transfers or appointment or whether by any judgment or decree of any court or in any way whatever and any appointment or assignment to said persons shall be void and of no effect."

The "present wife" of Henry at the time Benjamin's will and codicil were executed was Olea Bull Vaughan, who divorced Henry on May 11, 1911, and died on July 18 following. In April, 1915, Henry married plaintiff-appellee herein and on November 21, 1938, he died leaving a will in which he appointed the property referred to in his father's will to this second wife. At the time of Henry's death there were living an illegitimate child of his first wife as well as five first cousins and some other more distant relatives of hers. Also, such illegitimate child had two living children.

The sole question presented on this appeal is whether the property over which Henry had a power of appointment under his father's will should be included as part of his gross estate under section 302 (f) of the Revenue Act of 1926, 44 Stat. 9, as amended by section 404 of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A.Int. Rev.Code, § 811 (f), which provides so far as material:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated. * * *

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will * *."

Clearly Congress intended by this statute that only property over which a decedent's power of appointment was general should be included for estate tax purposes and since Congress did not define "a general power of appointment" as distinguished from a special or other kind of power, the quoted phrase must be taken in its generally accepted sense, that is, as meaning an unrestricted power to appoint to anyone the donee of the power might select.

"None of the revenue acts has defined the phrase 'general power of appointment'. The distinction usually made between a general and a special power lies in the circumstance that, under the former, the donee may appoint to anyone, including his own estate or his creditors, thus having as full dominion over the property as if he owned it; whereas, under the latter, the donee may appoint only amongst a restricted or designated class of persons other than himself.

"We should expect, therefore, that Congress had this distinction in mind when it used the adjective 'general'. The legislative history indicates that this is so."[1] Morgan v. Commissioner, 309 U.S. 78, 81, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585. See also Christine Smith Kendrick v. Commissioner, 34 B.T.A. 1040, 1042; Fidelity Trust Co. v. McCaughn, D.C., 1 F.2d 987, 988; Whitlock-Rose v. McCaughn, D. C., 15 F. 2d 591, 592; Leser v. Burnet, 4 Cir., 46 F. 2d 756, 758.

■ But the collector contends that the power of appointment exercised by the decedent here was a general power within the meaning of the taxing statute for two reasons; first because the limitation was so trivial as to be virtually non-existent and second because it did not prevent appointment either to the decedent's estate or to his creditors. In other words, he says that the power given to the decedent was of such a general character that he was "with respect to disposition of the property at his death, in a position not unlike that of its owner" and hence that Congress must have intended to tax the property covered by the power to the decedent's estate. We cannot agree.

For present purposes we may concede that the classic definition of a general power of appointment is too broad for application to a case involving a trivial or fake limitation obviously imposed for the purpose of tax evasion. However, we can postpone decision of this question until it arises, if it ever does (section 403 of the Revenue Act of 1942, 26 U.S.C.A.Int.Rev. Code, § 811, drastically amended the section we are considering), because in the case at bar there could have been no tax evasion or even tax avoidance motive present when the donor of the power drew his will in 1911, more than five years before the Revenue Act of 1916, 39 Stat. 756, and in addition there is every indica-

tion of the existence of a strong family reason for the limitation imposed. Nor can we say that the limitation was trivial or of no practical consequence to Henry. To be sure, we do not know his attitude toward his first wife, or her descendants, or her family, and it is useless to inquire into such transitory matters, but from the vehement language of Benjamin's will and the fact that Henry allowed his first wife to divorce him in spite of her conduct, it is safe to infer that he may have been favorably disposed toward at least some of his first wife's family in spite of her dereliction. At any rate on the facts before us we cannot say that the limitation was not genuinely imposed for valid family reasons and not patently wholly ineffective to limit Henry in the exercise of his power of appointment, and this it seems to us is enough to make the power not a general one within the meaning of the statute.

But the collector advances the view that whenever property may be appointed to a donee's estate or to his creditors the power must be deemed general, whatever other restrictions may be placed upon a donee with respect to eligible appointees, and he cites for authority the applicable regulation (Regulation 80 (1937 Ed.) art. 24) which reads:

"Only property passing under a general power should be included. Ordinarily a general power is one to appoint to any person or persons in the discretion of the donee of the power, or, however limited as to the persons or objects in whose favor the appointment may be made, is exercisable in favor of the donee, his estate, or his creditors."

■ Earlier regulations did not contain the provisions embodied in the last part of the second sentence quoted above but provided: "Only property passing under a general power should be included. Ordi-

---

[1] Report of the Ways and Means Committee on the Revenue Bill of 1918, H. Rep. No. 767, 65th Cong., 2nd Sess., pp. 21–22 (1939–1 Cum. Bull. (Part 2) 86, 101)

"There has also been included in the gross estate the value of property passing under a general power of appointment. This amendment as well as that preceding is for the purpose of clarifying rather than extending the existing statute. A person having a general power of appointment is, with respect to disposition of the property

at his death, in a position not unlike that of its owner. The possessor of the power has full authority to dispose of the property at his death, and there seems to be no reason why the privilege which he exercises should not be taxed in the same degree as other property over which he exercises the same authority. The absence of a provision including property transferred by power of appointment makes it possible, by resorting to the creation of such a power, to effect two transfers of an estate with the payment of only one tax."

narily[2] a general power is one to appoint to any person or persons in the discretion of the donee. Where the donee is required to appoint a specified person or class of persons, the property should not be included in his gross estate." So this contention of the Collector poses the question whether the 1937 Regulation can affix a new meaning to the statute in spite of the fact that with the earlier regulations outstanding Congress repeatedly re-enacted the statute without change and thus may be said to have adopted its administrative construction. See Morgan v. Commissioner, supra.

But we do not need to consider this question because any appointment or any other action by Henry with respect to the property in question was at all times subject to the father's vigorously and sweepingly worded injunction that none of it was ever directly or indirectly to be enjoyed by any member of the first wife's family, so that Henry was not free to appoint the property to his estate and dispose of his estate as he wished, or to his creditors and arrange who his creditors were to be. Thus Henry's power to dispose of the property at his death was by no means substantially as broad as it would have been had he owned it, and from this we conclude, as did the District Court, that the power of appointment was not a general one, even though article 24 of the 1937 regulations is valid, and in consequence that the property subject to the power did not form a part of the decedent's gross estate.

The judgment of the District Court is affirmed.

[2] This word was added to the original regulation (article 30 of Regulations 37 of 1918) by article 24 of Regulations 70 of 1926.